UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| EMILY M. NEAL,<br><br>    Plaintiff,<br><br>v.<br><br>THE COMMUNITY COLLEGE DISTRICT OF ST. LOUIS COUNTY, MISSOURI (aka ST. LOUIS COMMUNITY COLLEGE), PATRICK MALLORY, FELECCIA MOORE-DAVIS, and ANDREW LANGREHR,<br><br>    Defendants. | JURY TRIAL DEMANDED |

## COMPLAINT

COMES NOW Plaintiff Emily M. Neal, by her attorneys, Mathis, Marifian & Richter, Ltd., for her Complaint against Defendants the Community College District of St. Louis, St. Louis County, Missouri (aka St. Louis Community College), Patrick Mallory, Feleccia Moore-Davis and Andrew Langrehr (collectively, "Defendants") states as follows:

## NATURE OF THE CASE

1. Plaintiff Emily Neal, Ph.D ("Dr. Neal") was at all relevant times an educator with the Community College District of St. Louis, St. Louis County, Missouri (aka St. Louis Community College) (the "College"). Dr. Neal also served as Vice-President and later President of the College's faculty union. Dr. Neal has been denied her rights to freedom of speech and association, she has been treated differently than her male colleagues. She has also been retaliated against for the exercise of her federally protected rights. Therefore, she brings this action seeking damages under 42 U.S.C. §1983 for violations of her rights under the First and

Fourteenth Amendments to the United States Constitution as well as claims for damages under Title IX, 20 U.S.C. § 1681.[1]

## PARTIES

2.  At all times relevant to this lawsuit, Dr. Neal was a female citizen and resident of the City of St. Louis, Missouri.

3.  In 2009, Dr. Neal joined the College as an instructor. In 2018, she was promoted to full professor. Dr. Neal worked in the History, Political Science and Philosophy Department at the College's Meramec campus.

4.  Dr. Neal also served as Vice-President and later President of the College's faculty union, the STLCC-National Education Association (the "Union"). Specifically, Dr. Neal served as vice president of the Union from 2016 through July 2018 and as president of the Union from July 2018 through July 2021.

5.  The College is a political subdivision of the State of Missouri created pursuant to R.S.Mo. §§ 178.770-178.890. The College serves approximately 15,000 students and employs approximately 2,600 full and part-time faculty and staff.

6.  The College is, and at all relevant times was, an education program or activity receiving federal financial assistance within the meaning of Title IX, 20 U.S.C. § 1681.

7.  The management and operation of the College have been a subject of public interest and debate in the greater St. Louis metropolitan area.

8.  Defendant Patrick Mallory was, at all relevant times, Dean of the Social & Behavioral Sciences, Business and Accounting Division of the College's Meramec campus.

---

[1] Dr. Neal also has a Charge of Discrimination pending with the EEOC. She is filing this lawsuit before her administrative remedies have been exhausted with respect to her Title VII claim, but anticipates amending her Complaint to add claims based on her charge at a future date, once her administrative remedies have been exhausted.

Further, Defendant Mallory was, at all relevant times acting under color of state law with respect to the matters alleged herein. Finally, for purposes of this cause of action, Defendant Mallory is named in his individual and official capacities.

9. In addition, Dean Mallory was, at all relevant times, a citizen and resident of Alton, IL working in the Eastern District of Missouri.

10. Defendant Feleccia Moore-Davis was, at all relevant times, Campus President and Chief Academic Office of the College's Meramec campus. Further, Defendant Moore-Davis was, at all relevant times acting under color of state law with respect to the matters alleged herein. Finally, for purposes of this cause of action, Defendant Moore-Davis is named in her individual and official capacities.

11. In addition, Dr. Moore-Davis was, at all relevant times, a citizen and resident of the Eastern District of Missouri.

12. Defendant Andrew Langrehr was, at all relevant times, the Vice Chancellor for Academic Affairs of the College. Further, Defendant Langrehr was, at all relevant times acting under color of state law with respect to the matters alleged herein. Finally, for purposes of this cause of action, Defendant Langrehr is named in his individual and official capacities.

13. In addition, Dr. Langrehr was, at all relevant times, a citizen and resident of the Eastern District of Missouri.

## JURISDICTION

14. Jurisdiction of this action is proper in this Court under 28 U.S.C. §1331 and §1343, this suit being authorized by 42 U.S.C. §1983 and 20 U.S.C. § 1681 to redress the deprivation of rights, privileges, and immunities guaranteed by the First and Fourteenth Amendments to the United States Constitution, as well as the Missouri Constitution.

## VENUE

15. The United States District Court for the Eastern District of Missouri is a proper venue under 28 U.S.C. §1391(b) because the events giving rise to this lawsuit took place at the College, which is a Missouri municipal corporation located and operating within the Eastern District of Missouri, or otherwise within the Eastern District of Missouri.

## GENERAL ALLEGATIONS

16. Dr. Neal was a vocal member of the College's faculty throughout her 14 years of employment. Particularly as a political science professor, Dr. Neal wanted to serve her students, her fellow faculty members and the broader the College community beyond her classroom and to do her part to ensure that the College as a whole operated at its best.

17. One way Dr. Neal did this was by accepting a position as Vice-President of the Union in 2016.

18. In 2017, the administration proposed a large reduction in force ("RIF") of College faculty. As the Union Vice-President, Dr. Neal publicly and clearly opposed the RIF, including at meetings of the College's Board of Trustees.

19. Not long after engaging in this activity, still in 2017, Dr. Neal was targeted with an investigation that was contrary to College policy, including but not limited to the Student Complaints Policy, for remarks she made in a State and Local Government class regarding the College's Board of Trustees. Following the investigation, the College issued a written reprimand to Dr. Neal, rather than the verbal warning which served as a typical first step under the progressive disciplinary policy.

20. Despite this, as Union Vice-President and later President (from July 2018 through July 2021), Dr. Neal stayed informed regarding policy and employment matters at the College

and regularly advocated for faculty members, often contrary to the College administration's positions.

21. In April 2021, Dr. Neal sent an email to another employee upon learning that employee had access to Dr. Neal's online class space without Dr. Neal's knowledge or consent. In the email, Dr. Neal, who was Union President, stated that if this employee's access (which she understood to be a violation of FERPA) was not corrected, it would become the subject of a union grievance.

22. The College responded by again disciplining Dr. Neal for what it alleged was improper word choice and tone in the email and essentially accused her of threatening the other employee.

23. Dr. Neal grieved this discipline and it was overturned on February 23, 2023 by an independent arbitrator who found that, while the email "was aggressive in tone and not well received by several co-workers, *the overarching fact is that the Employer retaliated against Neal for threatening to bring a grievance challenging an alleged violation of the Joint Resolution.* This discipline violated the No Reprisals provision of the Joint Resolution and must be vacated." (emphasis added).

24. Also in April 2021, Dr. Neal filed an Employee Equity Complaint with the College and against Dean Mallory in connection with the overturned April 2021 discipline. Dr. Neal's complaint alleged that she was being discriminated against because of her female sex.

25. After filing the grievance and complaint, Dr. Neal's work environment worsened. She was subject to a level of scrutiny that did not apply to others, she was denied the Faculty Lecturer award despite being the Committee's nominee and it became apparent the College was trying to find a way to terminate her employment.

26. On or about August 16, 2022, prior to the start of the fall semester, Dr. Neal spoke to several of her departmental colleagues at an off-campus lunch on certain matters of public concern; namely:

   a. Advising that she had been informed that a senior administrator permitted their child to bypass the waitlist for enrollment in a popular degree program;

   b. Advising that she had been informed that another senior administrator was engaged in an affair with a subordinate that reported to the administrator; and

   c. Advising that she had been informed that a former senior administrator was engaged in an affair with someone who was the former administrator's subordinate when the administrator was with the College.

27. Less than two weeks later, on August 30, 2022, Defendant Mallory instructed Dr. Neal that she could not return to her classroom until they met. This instruction was given contrary to College policy which required him to obtain the Department of Human Resources' prior approval.

28. Dr. Neal met with Dean Mallory as requested, but it was a one-sided meeting. Dean Mallory commissioned an investigation into Dr. Neal's statements at the lunch, but it was also one-sided and Dr. Neal was not interviewed by the investigator.

29. Dr. Neal was then notified that she could not communicate with her enrolled students.

30. On September 6, 2022, Dean Mallory issued a memo to Dr. Neal's entire Department regarding her allegedly "inflammatory comments." The memo advised that the College was taking the matter "very seriously" and asked the other faculty members to ensure that the statements were not shared further.

31. Dr. Neal is not aware of any other instance in which faculty were instructed not to discuss important matters. Likewise, Dr. Neal is not aware of any other instance where matters concerning faculty discipline were shared with general faculty members.

32. On September 23, 2022, Dr. Neal filed her first grievance regarding the events surrounding her August 16 comments. Dr. Neal alleged violations of administrative and board policies.

33. On or about October 7, 2022, Dean Mallory informed Dr. Neal that he was recommending her for termination purportedly because of the statements she made at the lunch and the "continuing" nature of her behavior. Specifically, Dr. Neal had two prior disciplinary matters against her in five years, one of which (concerning the April 2021 email) was not final at the time and ultimately overturned through the faculty grievance process by an independent arbitrator.

34. On October 21, 2022, Campus President and Chief Academic Officer Dr. Feleecia Moore-Davis issued her recommendation for the termination of Dr. Neal's employment.

35. Dr. Neal appealed her recommended termination through another faculty grievance filed on November 8, 2022. This grievance explained that the College's grounds for her termination were incorrect and pretextual, that the College relied on discipline that was clearly instituted in retaliation for Dr. Neal's prior advocacy for her colleagues and her grievance for the inappropriate and overturned April 2021 discipline.

36. The College made her grievance process unusually difficult including but not limited to by setting events on short notice, setting events during College breaks or at other inconvenient times and attempting to conduct virtually events that are typically conducted in person. Unlike other grievances, the grievance process for faculty termination does not provide

for review by an independent arbitrator. This grievance was processed by Dean Mallory (step 1), Dr. Moore-Davis (step 2) and Dr. Langrehr (step 3).

37. Dr. Neal's termination became final and effective March 20, 2023.

## COUNT I

**UNLAWFUL RETALIATION IN VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENT RIGHT TO FREEDOM OF ASSOCIATION UNDER 42 U.S.C. §1983**

38. Dr. Neal incorporates by references paragraphs 1 to 37 of this Complaint as if set forth fully here.

39. Dr. Neal's right to freedom of association is protected by the First and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. §1983.

40. At all relevant times, Dr. Neal has been a member of the Union, including serving as its Vice-President and President as set forth above.

41. Dr. Neal actively participated in the Union and routinely acted as a spokesperson and representative for the Union and its members on matters of public interest and concern, including regarding the faculty reduction in force, sexual harassment and discrimination at the College, the College's retaliation against faculty for their exercise of protected rights and College policies and abuses of such policies by senior administrators.

42. As a result of Dr. Neal's public participation as a member, officer and leader of the Union, the Defendants engaged in actions, omissions and decisions aimed at denying Dr. Neal the rights and privileges granted under law, including, but not limited to:

  (a) Targeting Dr. Neal with unwarranted discipline in violation of College policy and procedure;

  (b) Imposing discipline against Dr. Neal for conduct that does not trigger discipline for other employees;

    (c) Imposing discipline on Dr. Neal in excess of that authorized by College policy and procedure;

    (d) Removing Dr. Neal from the classroom contrary to College policy and procedure;

    (e) Placing Dr. Neal on administrative leave;

    (f) Recommending Dr. Neal for termination; and

    (g) Terminating Dr. Neal's employment.

43. The actions, omissions and decisions alleged in this Count were designed to cause, have caused and will continue to cause, Dr. Neal to lose wages, compensation, entitlement and rights.

44. In addition, the actions alleged in this Count were designed to cause, have caused, and will continue to cause Dr. Neal to suffer humiliation and harm to her reputation, emotional and mental injuries, pain and suffering and other adverse consequences for which Dr. Neal seeks full damages and make whole relief.

45. Such actions, omissions, and decisions on the part of the defendants were taken under the color of law, and such actions, omissions and decisions have deprived Dr. Neal of her rights and privileges secured by the U.S. Constitution in violation of 42 U.S.C. §1983.

46. Such actions, omissions and decisions on the part of the defendants were done in a knowing, willful, reckless and bad faith manner, and violate clearly established constitutional and statutory provisions and rights of which a reasonable person would have known.

47. Defendants, individually, separately and/or jointly are fully liable to Dr. Neal under 42 U.S.C. §1983 based on their authority, actions, decisions and omissions. In addition, such unlawful actions, decisions and omissions were based on the policy-making and final decision-making authority of the defendants, and were based on the policy, custom, and practice

of defendants' anti-union animus and actions taken in retaliation for engaging in conduct protected by the First Amendment.

WHEREFORE, Dr. Neal prays for Judgment against Defendants and for relief in accordance therewith, including but not limited to:

(a) Compensatory damages in such amount as shall be proven at trial;

(b) Prejudgment interest;

(c) Her attorneys' fees and costs herein; and

(d) Such other and further relief as the Court deems just and proper.

## COUNT II

### UNLAWFUL RETALIATION IN VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENT RIGHT TO FREEDOM OF SPEECH UNDER 42 U.S.C. §1983

48. Dr. Neal incorporates by references paragraphs 1 to 37 of this Complaint as if set forth fully here.

49. Dr. Neal's right to freedom of speech is protected by the First and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. §1983.

50. At all relevant times, Dr. Neal actively spoke out on matters of public concern including, but not limited to the College's operations including regarding the faculty reduction in force, sexual harassment and discrimination at the College, the College's retaliation against faculty for their exercise of protected rights and College policies and abuses of such policies by senior administrators. The public has a vital interest in free and open discussion on these significant issues affecting their communities and taxpayer funded College.

51. After Dr. Neal spoke on such matters of public concern, specifically issues relating to the College's operations including regarding the faculty reduction in force, sexual

harassment and discrimination at the College, the College's retaliation against faculty for their exercise of protected rights and College policies and abuses of such policies by senior administrators, the Defendants individually, separately and/or jointly engaged in actions, omissions and decisions aimed at denying Dr. Neal rights and protections granted to her under law, including but not limited to:

(a) Targeting Dr. Neal with unwarranted discipline in violation of College policy and procedure;

(b) Imposing discipline against Dr. Neal for conduct that does not trigger discipline for other employees;

(c) Imposing discipline on Dr. Neal in excess of that authorized by College policy and procedure;

(d) Removing Dr. Neal from the classroom contrary to College policy and procedure;

(e) Placing Dr. Neal on administrative leave;

(f) Recommending Dr. Neal for termination; and

(g) Terminating Dr. Neal's employment.

52. The actions, omissions and decisions alleged in this Count were designed to cause, have caused and will continue to cause, Dr. Neal to lose wages, compensation, entitlement and rights.

53. In addition, the actions alleged in this Count were designed to cause, have caused, and will continue to cause Dr. Neal to suffer humiliation and harm to her reputation, emotional and mental injuries, pain and suffering and other adverse consequences for which Dr. Neal seeks full damages and make whole relief.

54. Such actions, omissions, and decisions on the part of the defendants were taken under the color of law, and such actions, omissions and decisions have deprived Dr. Neal of her rights and privileges secured by the U.S. Constitution in violation of 42 U.S.C. §1983.

55. Such actions, omissions and decisions on the part of the defendants were done in a knowing, willful, reckless and bad faith manner, and violate clearly established constitutional and statutory provisions and rights of which a reasonable person would have known.

56. Defendants, individually, separately and/or jointly are fully liable to Dr. Neal under 42 U.S.C. §1983 based on their authority, actions, decisions and omissions. In addition, such unlawful actions, decisions and omissions were based on the policy-making and final decision-making authority of the defendants, and were based on the policy, custom, and practice of defendants' anti-union animus and actions taken in retaliation for engaging in conduct protected by the First Amendment.

WHEREFORE, Dr. Neal prays for Judgment against Defendants and for relief in accordance therewith, including but not limited to:

(a) Compensatory damages in such amount as shall be proven at trial;

(b) Prejudgment interest;

(c) Her attorneys' fees and costs herein; and

(d) Such other and further relief as the Court deems just and proper.

## COUNT III
**Violation of Title IX, 20 U.S.C. § 1681 (Discrimination)**

57. Plaintiff repeats and realleges the allegations of paragraphs 1 through 37 of this Complaint as if set forth fully here.

58. Title IX of the Education Amendments Act of 1972 provides:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . .

20 U.S.C. § 1681(a).

59. At all relevant times, the College is and was an education program or activity receiving Federal financial assistance and otherwise met all of the relevant criteria of Title IX for status as a defendant to a Title IX suit.

60. At all relevant times the individual Defendants were administrators of the College with actual knowledge of the discriminatory conduct affecting Dr. Neal who perpetuated that discrimination and failed to take reasonable steps to address it.

61. The Defendants, including the College itself, discriminated against Plaintiff in that, Plaintiff was treated differently than her male counterparts. Male faculty members were not formally disciplined for alleged "incivility" even when the College and Defendants were aware of it. Male faculty members did not face retaliation, discipline and harassment for their work as leaders, members or representatives of the Union. Male faculty members did not receive the same level of discipline as Plaintiff did for her alleged disciplinary violations, including but not limited to bypassing the progressive disciplinary policy and going straight to a written warning for classroom remarks, issuing now overturned discipline for referencing that a matter could be the subject of a Union grievance, removing a full professor from the classroom prior to investigation and without HR approval, advising an entire department of a faculty member's disciplinary matter and "asking" the department not to further share information of public importance and, ultimately, termination of employment for alleged "incivility."

62. Defendants engaged in the above discriminatory and harassing conduct to intimidate and humiliate Plaintiff and other female faculty members in an attempt to exercise power and control over them.

63. The College and the Defendants were aware of these unfair conditions and permitted them to continue for years, despite Plaintiff's Employee Equity Complaint and grievances which raised sex discrimination.

64. The Defendants' actions were severe and objectively offensive, and deprived Plaintiff of her federally protected rights under Title IX.

65. Male faculty members at the College can expect an entirely different experience than female faculty members, and are not subjected to the same degrading and demeaning treatment and scrutiny as female faculty members.

66. Male faculty members can expect that they will receive informal or verbal counseling before formal discipline for alleged "incivility."

67. Male faculty members can expect that the College's policies and procedures will be fairly applied to them and that they will not be preemptively removed from their classrooms, instructed not to contact their enrolled students or have their disciplinary matters broadcast through a memo to the full Department.

68. Male faculty members can expect that they will not be retaliated against for their protected activity on behalf of the Union, in filing grievances, in filing Employee Equity Complaints, in speaking on significant matters of public concern and like conduct.

69. Male faculty members can expect that their employment with the College will be continued in all but the most exceptional of circumstances.

70. The Defendants responded to Plaintiff's complaints with callous indifference and failed to take appropriate corrective action.

71. The College invested officials who had actual knowledge of Defendants' actions with the duty to supervise and the power to end the actions, but such officials failed to do so.

72. As a direct and proximate result of the College's decision to accept the Defendants' actions, Plaintiff's employment with the College and her personal health, physical and mental, have been adversely affected.

73. As a direct and proximate result of the College's unlawful conduct, Plaintiff has suffered, and will continue to suffer, from the deprivation of access to the privileges and benefits of her employment, severe humiliation, embarrassment, degradation, mental anguish, and emotional distress.

WHEREFORE, Plaintiff Emily M. Neal prays for judgment against the College and for relief in accordance therewith, including but not limited to:

    (a) Compensatory damages;

    (b) Attorney fees;

    (c) Costs; and

    (d) All other relief that the Court deems just and proper.

## COUNT IV
### Violation of Title IX, 20 U.S.C. § 1681 (Retaliation)

74. Plaintiff repeats and realleges the allegations of paragraphs 1 through 37 of this Complaint as if set forth fully here.

75. Title IX of the Education Amendments Act of 1972 provides:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . .

20 U.S.C. § 1681(a).

76. At all times relevant herein, the College constituted an education program or activity receiving Federal financial assistance and otherwise met all of the relevant criteria of Title IX for status as a defendant to a Title IX suit.

77. At all relevant times the individual Defendants were administrators of the College with actual knowledge of the retaliatory conduct affecting Dr. Neal who perpetuated that retaliation and failed to take reasonable steps to address it.

78. The Defendants, including the College itself, retaliated against Plaintiff for her Employee Equity Complaint and her grievance alleging, in part, gender discrimination. Following these activities, Plaintiff was harassed and retaliated against, including but not limited to by:

   (a) Being scrutinized in the performance of her duties;

   (b) Being formally disciplined under policies not applied to other colleagues;

   (c) Being targeted with unwarranted discipline in violation of College policy and procedure (including overturned discipline);

   (d) Being removed from the classroom contrary to College policy and procedure;

   (e) Having her disciplinary matters shared with her entire Department contrary to College policy and procedure;

   (f) Being placed on administrative leave;

   (g) Being recommended for termination;

   (h) Complicating the grievance process by providing short notice, attempting to conduct proceedings virtually and seeking to hold meetings and events on inconvenient dates and times (such as College holidays); and

   (i) Terminating Dr. Neal's employment.

79. Defendants engaged in the above acts and omissions to intimidate and humiliate Plaintiff in an attempt to exercise power and control over her.

80. The College and the Defendants were aware of this retaliation but perpetuated it and certainly allowed it to continue.

81. The Defendants' actions were severe and objectively offensive, and deprived Plaintiff of her federally protected rights under Title IX.

82. The Defendants responded to Plaintiff's complaints with callous indifference and failed to take appropriate corrective action.

83. The College invested officials who had actual knowledge of Defendants' actions with the duty to supervise and the power to end the actions, but such officials failed to do so.

84. As a direct and proximate result of the College's decision to accept the Defendants' actions, Plaintiff's employment with the College and her personal health, physical and mental, have been adversely affected.

85. As a direct and proximate result of the College's unlawful conduct, Plaintiff has suffered, and will continue to suffer, from the deprivation of access to the privileges and benefits of her employment, severe humiliation, embarrassment, degradation, mental anguish, and emotional distress.

WHEREFORE, Plaintiff Emily M. Neal prays for judgment against the College and for relief in accordance therewith, including but not limited to:

(e) Compensatory damages;

(f) Attorney fees;

(g) Costs; and

(h) All other relief that the Court deems just and proper.

Respectfully Submitted,


By: __*/s/* Laura E. Schrick_____
Laura E. Schrick, #56713
Mathis, Marifian & Richter, Ltd.
23 Public Square, Suite 300
Belleville, IL 62220
(618) 234-9800 Phone
(618) 234-9786 Fax
lschrick@mmrltd.com

*Attorney for Plaintiff, Emily M. Neal*